CINQUE & CINQUE, P. C.
845 Third Avenue
Suite 1400
New York, New York 10022
Telephone No.: 212-759-5515
Telefax No.: 212-759-7737
E-mail Address: CINQUE845@aol.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

YNGWIE MALMSTEEN,

Plaintiff,

-against-

BERDON, LLP, MICHAEL MITNICK, JAMES LEWIS and JAMES LEWIS ENTERTAINMENT, INC.,

Defendants.

-------------------------------------------------------X

05 CIV. 958
ECF Case

COMPLAINT

Jury Trial Demanded

Plaintiff Yngwie Malmsteen through his attorneys Cinque & Cinque, P. C., as and for his complaint alleges:

## JURISDICTION AND PARTIES

1. Plaintiff Yngwie Malmsteen is a resident of the State of Florida. Plaintiff is a composer, musician and world class guitar virtuoso. Over the years, some 24 albums containing plaintiff's recorded performances have been released

in the United States and throughout the rest of the world selling millions of unit. Plaintiff has been the recipient of a Grammy nomination.

2. Defendant Berdon, LLP ("Berdon") is a limited liability partnership formerly known as David Berdon & Co., LLP, registered under the laws of the State of New York with its principal place of business in the State of New York. Berdon is an accounting firm comprised of certified public accountants and is engaged inter alia in the business of providing accounting and business management services to musicians and entertainers. None of the Berdon partners is a Florida domiciliary.

3. Defendant Michael Mitnick ("Mitnick"), a certified public accountant and member of Berdon is a New York domiciliary.

4. Defendant James Lewis ("Lewis") is a resident of the State of Connecticut and at all times relevant to the allegations in the complaint was the sole shareholder and dominator of James Lewis Entertainment, Inc. which as hereinafter alleged was nothing more than an undercapitalized shell corporation formed by Lewis to act as his alter ego for the purposes of defrauding and deceiving innocent artists, performers and entertainers such as plaintiff.

5. Defendant James Lewis Entertainment, Inc. ("Entertainment") was, at the times alleged in this complaint, a corporation organized under the laws of the State of Connecticut with its principal place of business in the State of

Connecticut. Entertainment is presently defunct and dissolved. From inception, Entertainment was an undercapitalized shell dominated and controlled by James Lewis such that there was no separateness between them. Entertainment was a mere instrumentality of Lewis and a vehicle to commit fraud. The acts of Entertainment were in reality those of Lewis who is personally liable therefor. The corporate veil of Entertainment should be pierced.

6. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(a), in that the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of diverse states.

## BACKGROUND

### (A) The Fiduciary Relationship Between Plaintiff and Defendants

7. In their capacity as fiduciaries, Lewis and Entertainment undertook to advise, counsel and guide plaintiff with respect to all aspects of his professional career including transactions and dealings with record companies, booking agents, promoters, etc. In addition, defendants undertook to assist and guide plaintiff with respect to the management of his financial affairs. At the time, defendants knew plaintiff was a musician unsophisticated and inexperienced in the business and financial aspects of the Entertainment industry and that he would rely heavily upon them as his fiduciaries to provide guidance and counseling and to

recommend accountants, tax specialists and financial advisors and generally oversee the activities of these agents.

8. As part of the personal management services, Lewis and Entertainment promised plaintiff that they would interview and recommend a qualified business manager and accountant who would work together with them to provide all necessary personal and financial management services required by plaintiff including without limitation overseeing and approving financial transactions, accounting functions including collection and disbursement of funds paid to plaintiff, reconciliation and money management, preparation and filing of income tax returns, payment of personal and business bills and all those other functions typically assumed by a fiduciary in the position of defendants with respect to the management of a client's affairs.

9. In or about 1993 Lewis and Entertainment recommended that plaintiff employ the services of Mitnick and his firm (at that time Robbins, Spielman, Slayton & Halfon) to provide these financial and business management services. Based upon his trust and reliance upon defendants, plaintiff accepted this recommendation and engaged Mitnick and the Robbins firm. Within a year thereafter, Mitnick became a member or partner of Berdon and together they provided business management services previously performed by the Robbins firm.

**(B) Defendants Form a Conspiracy to Defraud Plaintiff**

10. Shortly after this move to Berdon, Lewis and Mitnick approached plaintiff and told him that it would be wise for his personal appearance, concert and touring activities to be handled by a separate entity and recommended to plaintiff that Lewis, Mitnick and Berdon form an entity known as Malmsteen Touring Corp. in the State of Delaware and that Lewis and Mitnick become officers and directors of this entity. In reliance upon the representations and recommendations made by Lewis and Mitnick, individually and on behalf of Berdon, plaintiff agreed to the formation of this corporation and to the appointment of Lewis and Mitnick as officers and directors.

11. During the period 1993 through 2000, plaintiff earned millions of dollars in royalties from record companies which distributed his records throughout the world as well as fees from his personal appearances and concert performances. These monies were collected, managed and distributed by Lewis, Mitnick and Berdon in their capacities as managers and fiduciaries.

12. Throughout the course of their representation of plaintiff during the period 1993 through 2000, plaintiff trusted Lewis, Mitnick and Berdon to honestly and faithfully discharge their responsibilities to him as agents and fiduciaries. During this time, defendants continually assured plaintiff that all of his money was being collected, accounted for and disbursed by them in their fiduciary capacity as

necessary and appropriate and that all disbursements made with respect to plaintiff's funds were appropriate.

13. In or about 1998, in furtherance of this plan and scheme, and without plaintiff's knowledge or consent, defendants established two bank accounts with Republic National Bank in New York under the names of Yngwie Malmsteen and Malmsteen Touring, Inc. Although both accounts bore plaintiff's name, the only signatories were Lewis and Mitnick. In its capacity as plaintiff's business manager, Berdon had the obligation and duty to monitor and supervise all aspects of the administration of plaintiff's finances. Berdon was directly involved in these activities and at all times was responsible for the conduct of Mitnick.

14. At no time did Berdon advise plaintiff that Lewis and Mitnick had opened these accounts and were depositing funds belonging to plaintiff into them. At no time did Berdon send plaintiff the monthly statements of account, canceled checks, deposit slips and credit advices. As a result, plaintiff was in no position to monitor the receipt and disbursement of his funds.

15. In violation of their fiduciary duties to plaintiff, defendants covertly and fraudulently converted to their own use monies due plaintiff by diverting these funds into the bank accounts controlled by Lewis and Mitnick. Checks were drawn and wire transfers were implemented from these accounts directly to the order of Entertainment and Berdon and signed or authorized by Lewis and/or

Mitnick, without plaintiff's knowledge or consent. On some occasions monies due plaintiff were secretly diverted by defendants directly from record companies and promoters into bank accounts of Entertainment. On other occasions defendants utilized plaintiff's monies to pay personal expenses of defendants, their associates and family members.

16. At the present time, plaintiff has been able to uncover some, but certainly not all of the information and data relating to the fraud that was perpetrated upon him. As of this point in time, plaintiff is able to make the foregoing allegations of fraud:

(a) By letter dated August 11, 1997, Lewis wrote to Tatsu Hirano of Watanabe, a Japanese music publisher which owed money to plaintiff stating: "Please advise your finance department that all future monies for Yngwie should be wired to the above account only!" [referring to the account of James Lewis Entertainment, Inc., Bank of New York for credit to Putnam Trust, 10 Mason Street, Greenwich, CT, account no.: 641134809). To the best of plaintiff's knowledge, information and belief at least $200,000.00 was wired to the James Lewis Entertainment, Inc. account in reliance upon the August 11, 1997 letter: $100,000.00 on August 22, 1997 and $100,000.00 on December 19, 1997. These funds were wrongfully appropriated from plaintiff and diverted to the benefit of defendants pursuant to their conspiracy.

(b) James Lewis similarly improperly diverted at least $255,000.00 due plaintiff from Dream Catcher, an English record company via the James Lewis Entertainment, Inc. bank account as follows: $10,000.00 on April 1, 1998, $10,000.00 on March 17, 1999, $50,000.00 on September 16, 1998, $25,000.00 on November 4, 1998, $25,000.00 on November 6, 1998, $25,000.00 on March 10, 1999, $5,000.00 on March 17, 1999, $10,000.00 on March 17, 1999, $45,000.00 on August 3, 1999, $10,000.00 on August 16, 1999, $10,000.00 on December 21, 1999, $20,000.00 on January 5, 2000, and $10,000.00 on January 19, 2000.

(c) James Lewis similarly improperly diverted at least $80,000.00 due plaintiff from Warner Chappell, a music publisher, as follows: $50,000.00 on March 20, 1997 and $30,000.00 on October 30, 1997.

(d) Plaintiff's funds were also improperly diverted to the James Lewis Entertainment, Inc. bank account from other sources. During the period from October 1997- May 1998 (the only period for which plaintiff has concrete data concerning transactions in the James Lewis Entertainment, Inc. bank account), plaintiff's funds were diverted as follows:

| Date | Payor | Amount |
|---|---|---|
| 10/20/97 | Pony Canyon (Japanese record company) | $ 53,435.00 |
| 10/31/97 | Artemis BV (Dutch music publisher) | $ 29,982.50 |

| | | |
|---|---|---|
| 11/5/97 | Music For Nations (English record company) | $ 2,932.80 |
| 11/20/97 | Pony Canyon | $ 1,985.00 |
| 12/5/97 | Pony Canyon | $ 30,728.62 |
| 1/5/98 | Pony Canyon | $ 99,995.00 |
| 1/20/98 | Pony Canyon | $ 20,382.77 |
| 2/20/98 | Pony Canyon | $ 24,985.00 |
| 2/25/98 | Pony Canyon | $ 99,995.00 |
| 3/5/98 | Udo Artists (Japanese promoter) | $144,500.00 |
| 3/13/98 | Nationwide International | $ 9,980.00 |
| 4/2/98 | Wodena | $ 10,000.00 |
| 4/3/98 | Winterland Productions (merchandiser) | $ 25,000.00 |
| 4/6/98 | Udo Artists | $ 70,964.38 |
| 4/21/98 | Music For Nations | $ 7,746.91 |
| 5/1/98 | Udo Artists | $ 37,798.29 |
| 5/20/98 | Pony Canyon | $ 6,654.28 |
| 5/20/98 | Pony Canyon | $ 14,995.00 |

(e) James Lewis Entertainment, Inc. wrongfully diverted substantial sums from the accounts of Yngwie Malmsteen and Malmsteen Touring, Inc. without plaintiff's knowledge or consent, for alleged "reimbursement for expenses." Included among these "expenses" were purely personal expenses of

Mr. Lewis and his wife Gila Lewis, such as dinners at Eclisse Restaurant in Rye Brook, New York; Tera Restaurant, Hunan Gourmet, Fresh Fields, Ristorante Paradiso, Applaus, Pasta Vera, Elm Street Oyster House, Horseneck Liquors and Max Steak & BBQ in Greenwich, Connecticut; The Mansion Clam House in Westport, Connecticut; Fjord Fisheries in Cos Cob, Connecticut, Hay Day in Riverside, Connecticut, Two Moons in Port Chester, New York; and Crab Shell in Stanford, Connecticut.

(f) At this point in time, plaintiff has been able to ascertain that on or about December 8, 1999, defendants misappropriated the sum of $434,413.76 from the accounts in the name of Yngwie Malmsteen and Malmsteen Touring, Inc. by paying this sum to themselves without plaintiff's knowledge, approval or consent. As previously alleged, although each of the accounts bore plaintiff's surname, he was not a signatory to either of them. Plainly and simply, defendants embezzled these funds.

17. Defendants were duty bound both in honesty and in their capacity as plaintiff's fiduciaries to disclose to plaintiff the fact that they had received millions of dollars of his funds which they then appropriated and disbursed to themselves and their designees.

18. Defendants wrongfully withheld complete information from plaintiff concerning their receipt and disbursement of plaintiff's money, and defendants

willfully and fraudulently concealed their wrongdoing from plaintiff.

19. Plaintiff reasonably relied upon defendants' representations in their capacity as plaintiff's fiduciaries and did not know or should not have known of any injury until plaintiff had the opportunity to retain independent accountants to review plaintiff's financial records in or about April of 2000.

20. As a result of defendants' breach of their fiduciary duties and affirmative concealment and fraud, the statute of limitations should be equitably tolled at least until plaintiff discharged defendants in or about April of 2000, since defendants' wrongful affirmative acts and their concealment of these acts from plaintiff prevented him from learning about facts which would support the cause of action asserted herein.

21. Plaintiff acted at all times reasonably and with due diligence to discover the facts relating to his finances and to protect his rights.

## FIRST CLAIM FOR RELIEF

### (Fraud and Deceit)

22. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "21" of the complaint.

23. With full knowledge of the rights of plaintiff and their fiduciary obligations to him, defendants engaged in the fraudulent conduct described above. By reason of the relationship, plaintiff relied upon defendants to deal fairly and

honestly with him in their capacity as fiduciaries. Taking advantage of plaintiff's misplaced trust, defendants deliberately, willfully and repeatedly engaged in the fraudulent conduct described above and materially breached their fiduciary obligations.

24. By reason of the foregoing, plaintiff sustained damage in the amount and manner described in this complaint in a sum in excess of $1,000,000.00 for which each defendant is jointly and severally liable.

25. As the acts, practices and course of conduct of defendants in furtherance of their conspiracy to defraud were willful and malicious, plaintiff is entitled to punitive and exemplary damages against each of the defendants in the minimum sum of $5,000,000.00 or such greater sum as may be assessed by the trier of fact..

**SECOND CLAIM FOR RELIEF**

**(Unlawful Appropriation)**

26. Plaintiff repeats and realleges the allegations contained in paragraphs “1" through “23" of the complaint.

27. As a result of the foregoing conspiracy, defendants engaged in acts of unlawful appropriation of plaintiff's assets and property.

28. By reason of the foregoing, plaintiff sustained damage in the amount and manner described in this complaint in a sum in excess of $1,000,000.00 for

which each defendant is jointly and severally liable.

29. As the acts, practices and course of conduct of defendants in furtherance of their conspiracy to defraud were willful and malicious, plaintiff is entitled to punitive and exemplary damages against each of the defendants in the minimum sum of $5,000,000.00 or such greater sum as may be assessed by the trier of fact.

**THIRD CLAIM FOR RELIEF**

**(Breach of Fiduciary Duty)**

30. Plaintiff repeats and realleges the allegations contained in paragraphs “1" through “23" of the complaint.

31. Defendants materially breached their obligations as fiduciaries and trustees of plaintiff.

32. By reason of the foregoing, plaintiff sustained damage in the amount and manner described in this complaint in a sum in excess of $1,000,000.00 for which each defendant is jointly and severally liable.

33. As the acts, practices and course of conduct of defendants in furtherance of their conspiracy to defraud were willful and malicious, plaintiff is entitled to punitive and exemplary damages against each of the defendants in the minimum sum of $5,000,000.00 or such greater sum as may be assessed by the trier of fact..

**FOURTH CLAIM FOR RELIEF**

**(Unjust Enrichment)**

34. Plaintiff repeats and realleges the allegations contained in paragraphs “1" through “23" of the complaint.

35. Defendants have been unjustly enriched at plaintiff’s expense.

36. By reason of the foregoing, plaintiff sustained damage in the amount and manner described in this complaint in a sum in excess of $1,000,000.00 for which each defendant is jointly and severally liable.

37. As the acts, practices and course of conduct of defendants in furtherance of their conspiracy to defraud were willful and malicious, plaintiff is entitled to punitive and exemplary damages against each of the defendants in the minimum sum of $5,000,000.00 or such greater sum as may be assessed by the trier of fact..

**FIFTH CLAIM FOR RELIEF**

**(Accounting)**

38. Plaintiff repeats and realleges the allegations contained in paragraphs “1" through “23" of the complaint.

39. Plaintiff is entitled to an accounting from defendants for all sums of money which came into their possession or were disbursed by them during the

course of the relationship.

40. Upon an accounting there will be shown to be due plaintiff large sums of money which were misappropriated and converted by defendants to their own use and benefit, the precise amount of which is unknown to plaintiff and this time and cannot be known without an accounting.

41. Plaintiff has no adequate remedy at law.

WHEREFORE, plaintiff demands judgment against defendants jointly and severally as follows:

(a) on the First Claim for Relief for compensatory damages in the minimum sum of $1,000,000.00 and punitive and exemplary damages in the minimum sum of $5,000,000.00 or such greater sum as may be assessed by the trier of fact;

(b) on the Second Claim for Relief for compensatory damages in the minimum sum of $1,000,000.00 and punitive and exemplary damages in the minimum sum of $5,000,000.00 or such greater sum as may be assessed by the trier of fact;

(c) on the Third Claim for Relief for compensatory damages in the minimum sum of $1,000,000.00 and punitive and exemplary damages in the minimum sum of $5,000,000.00 or such greater sum as may be assessed by the trier of fact;

(d) on the Fourth Claim for Relief for compensatory damages in the

minimum sum of $1,000,000.00 and punitive and exemplary damages in the minimum sum of $5,000,000.00 or such greater sum as may be assessed by the trier of fact;

(e) on the Fifth Claim for Relief for an accounting and payment of all sums shown to be due thereon;

(f) together with interest, reasonable attorneys' fees, costs and disbursements and such other and further relief as may be just and proper.

CINQUE & CINQUE, P. C.

By:______/s/____________
James P. Cinque (JC-3673)
Attorneys for Plaintiff
845 Third Avenue, Suite 1400
New York, New York 10022
Telephone No.: 212-759-5515
Telefax No.: 212-759-7737
E-mail: CINQUE845@aol.com