UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
YNGWIE MALMSTEEN,                              :     05 Civ. 00958 (RJH)
:
                Plaintiff,       :
:     **MEMORANDUM OPINION**
      -against-                               :     **AND ORDER**
:
BERDON, LLP, et al.                            :
:
                Defendants.      :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      In this action, plaintiff Yngwie Malmsteen ("plaintiff") has asserted claims against defendants Berdon, LLP ("Berdon"), Michael Mitnick, James Lewis and James Lewis Entertainment ("JLE") for, *inter alia*, breach of contract and breach of fiduciary duty. Plaintiff is a professional musician who employed defendant Lewis as his personal manager and defendant Mitnick as his business manager in the 1990s and until early 2000. Plaintiff claimed that Lewis embezzled millions of dollars from him between approximately 1995 and 2000 and that defendants Mitnick and Berdon (collectively, "defendants") enabled Lewis to do so. Plaintiff alleged that defendants acted with fraudulent intent or, alternately, in violation of their contractual and fiduciary duties. Prior to trial, the Court held that the statute of limitations barred all of plaintiff's claims based on acts occurring prior to January 28, 1999.

      A trial was held from May 27, 2008 to June 2, 2008 on plaintiff's claims of fraud, breach of contract, and breach of fiduciary duty against Mitnick and Berdon. Lewis and JLE have never appeared in this action and were not parties to the trial, though Lewis was deposed, and videotaped excerpts of his deposition were played to the jury at trial. At the

close of plaintiff's case, defendants moved for judgment as a matter of law under Rule 50(a) on all of plaintiff's claims. (Trial Tr. 188–96.) The Court granted the motion with respect to the fraud claim but allowed the breach of contract and breach of fiduciary duty claims to go forward. (*Id.* at 207.) At the end of the trial, the jury returned a verdict for plaintiff on both of his claims. The special verdict form completed by the jury indicated that plaintiff was entitled to zero dollars on his breach of contract claim, $450,000 in damages on his breach of fiduciary duty claim, and zero dollars in punitive damages on the breach of fiduciary duty claim. (Larkin Decl. Ex. T, June 11, 2008.)

Defendants have filed the instant motion seeking (i) judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), (ii) a new trial pursuant to Fed. R. Civ. P. 59(a), or (iii) denial of the motion for a new trial conditional on plaintiff's acceptance of a remittur on damages.

**I.      Legal Standards**

   **A.      Rule 50**

"Under Rule 50, judgment as matter of law is appropriate where 'there is no legally sufficient evidentiary basis for a reasonable jury to find for' a party." *Merrill Lynch Interfunding v. Argenti*, 155 F.3d 113, 120 (2d Cir. 1998) (quoting Fed. R. Civ. P. 50(a)(1)). In deciding a Rule 50 motion, the Court "cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." *Black v. Finantra Capital, Inc.*, 418 F.3d 203, 209 (2d Cir. 2005). A jury is "entitled to believe some parts and disbelieve other parts of the testimony of any given witness," *Tolbert v. Queens College*, 242 F.3d 58, 74 (2d Cir. 2001); *see also Book*

2

*v. Dettenrieder*, 14 Fed. Appx. 40, 43 (2d Cir. 2001), and "need not accept a given witness's testimony even if it is uncontradicted." *Book*, 14 Fed. Appx. at 43.

"[A] court may properly grant judgment as a matter of law" when viewing the evidence "in the light most favorable to the nonmoving party" and "grant[ing] that party every reasonable inference that the jury might have drawn in its favor," "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached." *Merrill Lynch Interfunding*, 155 F.3d at 120–21.

A post-trial motion for judgment as a matter of law under Rule 50(b) "is limited to those grounds that were specifically raised in [a] prior [Rule 50(a) motion]; the movant is not permitted to add new grounds after trial." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 286 (2d Cir. 1998) (internal quotation marks omitted). "Although Rule 50(a) does not define how specific the motion must be, the purpose of requiring the moving party to articulate the ground on which [judgment as a matter of law] is sought is to give the other party an opportunity to cure the defects in proof that might otherwise preclude him from taking the case to the jury." *Id.* at 287 (internal citations and quotation marks omitted). Therefore, "[t]he ultimate question is whether the [Rule 50(a)] motion, either of itself or in the context of the ensuing colloquy, was sufficiently specific to alert the opposing party to the supposed deficiencies in her proof. If specificity was lacking," the Rule 50(b) motion may not be granted "unless that result is required to prevent manifest injustice." *Id.*

### B. Rule 59 and Remittur

> Rule 59(a) . . . has a less stringent standard than Rule 50 in two significant respects: (1) a new trial under Rule 59(a) may be granted even if there is substantial evidence supporting the jury's verdict, and (2) a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner. That being said, for a district court to order a new trial under Rule 59(a), it must conclude that the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice, i.e., it must view the jury's verdict as against the weight of the evidence.

*Manley v. AmBase Corp.*, 337 F.3d 237, 244–45 (2d Cir. 2003) (internal citations and quotation marks omitted). "Rulings on motions under . . . [Rule] 59(a) are committed to the sound discretion of the district court . . . ." *Sequa Corp. v. Gbj Corp.*, 156 F.3d 136, 143 (2d Cir. 1998).

When a party moves for a new trial "on the ground that the amount of damages awarded is excessive, a court may require a plaintiff to elect between remitting a specified amount of the damage award, or submitting to a new trial." *Rauson v. Conrail*, No. 81 Civ. 5835 (CHT), 1983 U.S. Dist. LEXIS 15527, at *4 (S.D.N.Y. July 12, 1983).

### II. Defendants' Post-Trial Motions

Defendants assert a number of arguments in connection with their post-trial motions. They argue (1) that no reasonable jury could have found for plaintiff on either cause of action because there was no evidence to support a finding that Lewis embezzled

4

any money from plaintiff during the relevant period[1]; (2) that plaintiff's claim for breach of contract is time-barred because it is premised on defendants' alleged professional malpractice; (3) that there was no evidence that defendants breached any express contractual provision; (4) that plaintiff's claim for breach of fiduciary duty is time-barred because the jury did not award damages on plaintiff's breach of contract claim; (5) that there was no evidence that defendants breached any fiduciary duty to plaintiff; (6) that the damages awarded were excessive and must be reduced; and (7) that plaintiff's counsel's summation was "so far beyond permitted boundaries" that a new trial is required. Defendants' contentions will be addressed *seriatim*.

### A. A Reasonable Jury Could Have Concluded That Lewis Embezzled Money From Plaintiff

Defendants argue that no reasonable jury could have concluded that Lewis embezzled money from plaintiff because there was no evidence regarding plaintiff's gross income or expenses, no evidence that Lewis diverted any money inappropriately, and no evidence that deposits into Lewis' bank account (the JLE account) were intended for plaintiff.

The Court finds that there was sufficient evidence from which a reasonable jury could conclude that Lewis embezzled plaintiff's funds out of the JLE bank account. Evidence of plaintiff's gross or net income was not required. Plaintiff's expert Gary Cohen testified that the JLE bank statements from 1999 and 2000 indicated deposits totaling approximately $810,000 from companies and individuals with which plaintiff

---

[1] The jury charges specifically instructed the jury that, in order to find that the defendants breached a contract with plaintiff or breached fiduciary duties to Plaintiff, the jury must first find by a preponderance of the evidence that Lewis embezzled money from plaintiff. (Jury Instructions #12, #16.)

testified he had business relationships. (Trial Tr. 55, 57–59; Pl.'s Ex. 42.)[2] Cohen testified that $475,000 remained after subtracting Lewis's commissions, expense reimbursements, transfers, loan proceeds, and two payments made to plaintiff's divorce attorney, and that only $8,000 of this $475,000 was paid into plaintiff's bank account. (Trial Tr. 120–29; Pl.'s Ex. 42.) Cohen testified that this amount would be reduced by approximately $90,000 if certain payments to "Lars Yngwie Malmsteen" and individuals identified as plaintiff's band members had been excluded. (Trial Tr. 182–83.) This amount did not include approximately $158,000 in deposits to the JLE account from unidentified sources.[3] (*Id.* at 125, 128, 183.)

Viewing the evidence in the light most favorable to the plaintiff and granting him every reasonable inference, Cohen's testimony indicates that the JLE account contained between approximately $385,000 and $543,000 in funds belonging to plaintiff and that only $8,000 of this amount was paid into plaintiff's bank account. A reasonable jury could conclude that Lewis embezzled some or all of this amount.

Contrary to defendants' suggestion, plaintiff was not required to establish that "there was any income remaining for [plaintiff] after the expenses were paid." (Defs.' Mem. 5.) Defendants did not call an expert witness to rebut Cohen's analysis and offered little or no evidence regarding the purpose or recipients of the unidentified payments from the JLE account. The jury was entitled to reject defendants' largely unsupported

---

[2] Plaintiff's expert Gary Cohen calculated $811,086.50 as the total amount deposited into the JLE bank account. This amount appears to include deposits from three sources (Douglas A. Aldrich, In House Inc., and "ATM SWF of 99/12/10") that are not identified as entities with which plaintiff had a business relationship. (Pl.'s Ex. 42.)

[3] Applying Cohen's methods, if this amount were to be considered as income to plaintiff, it should have been reduced by fifteen percent to account for the commission payable to Lewis on this income. (*See* Pl.'s Ex. 42.)

argument that Lewis paid expenses on behalf of plaintiff beyond those specifically identified.

Defendants contend that Cohen's assumption that all of the deposits into the JLE account were payments related to plaintiff must be rejected in light of Lewis's testimony that he received payments for other clients from some of the same companies with which plaintiff allegedly did business. However, it was not necessary for the jury to assume that *all* of the deposits into the JLE account were associated with plaintiff in order to conclude that Lewis stole plaintiff's money. Furthermore, the jury was entitled to reject Lewis's testimony entirely.

> **B.    Plaintiff's Breach of Contract Claim is Not Time-Barred**

Defendants argue that plaintiff's breach of contract claim "asserts nothing more than a failure to exercise due care in the performance of professional services" and, as such, should have been treated as a professional malpractice claim subject to a three-year statute of limitations under New York law. (Defs.' Mem. 7–9.) Because defendants did not raise this argument as part of their Rule 50(a) motion (*see* Trial Tr. 188–208), the Court can only grant the requested relief if necessary to prevent "manifest injustice," *see, e.g., Broadnax v. City of New Haven*, 415 F.3d 265, 268 (2d Cir. 2005) ("[I]f an issue is not raised in a previous motion for a directed verdict, a Rule 50(b) motion should not be granted unless it is required to prevent manifest injustice." (internal quotation marks omitted)). The Court finds that it is not necessary to dismiss plaintiff's breach of contract claim as untimely to prevent manifest injustice. As discussed in more detail below, sufficient evidence was presented from which a reasonable jury could have concluded that the defendants breached their contract with plaintiff.

### C.  A Reasonable Jury Could Have Concluded That Defendants Breached Their Contract With Plaintiff

Defendants contend that plaintiff's breach of contract claim should not have gone to the jury because there was no evidence that defendants breached any express contractual claim. (Defs.' Mem. 9–10.) The Court finds that there was sufficient evidence from which a reasonable jury could have found that Mitnick, acting as a business manager, agreed to monitor plaintiff's income and verify that payments to plaintiff were properly accounted for. For example, a January 1994 letter from Mitnick to plaintiff states that Mitnick and his former employer had been engaged to act as plaintiff's "accountants and business managers with respect to all of your personal and financial activities." (Pl.'s Ex. 1; Trial Tr. 40.) Plaintiff further testified that Mitnick agreed to "make sure that all of [plaintiff's] income was collected" and to "make sure that all [plaintiff's] moneys were collected and accounted for and looked at and put in the right spot." (Trial Tr. 39, 42.) Mr. Cohen offered expert opinion testimony regarding the practice of business managers in the music industry; he stated that a business manager would know about all of a client's sources of income and collect such income and "generally . . . do everything the client would do for himself if the client had the time and was not working." (*Id.* at 115, 117–19.) Mr. Cohen's expert report, further states that "a business manager is customarily responsible for . . . maintain[ing] awareness of all professional and personal income earned by client and [ensuring] the collection of this income," (Pl.'s Ex. 42). The jury was entitled to credit this evidence and reject defendants' evidence to the contrary.

### D. The Jury's Failure to Award Damages for Plaintiff's Breach of Contract Claim Does Not Require Vacatur of the Jury's Finding on Liability

The jury indicated on the verdict form that plaintiff had proven by a preponderance of the evidence that defendants breached their contract with plaintiff and that plaintiff was entitled to zero dollars in actual damages for this claim. (*See* Verdict Form, Questions 1, 2.) Defendants argue that the jury's failure to award monetary damages should be interpreted as a finding that there was no breach of contract (*see* Defs.' Mem. 11–12), and that this in turn requires the Court to vacate the jury's verdict on the breach of fiduciary claim as time-barred because the breach of fiduciary duty claim was entitled to a six-year (rather than three-year) statute of limitations period only if it was based on an underlying breach of contract.[4] Defendants argue in essence that the jury's finding of liability under the contract is inconsistent with the finding of no damages. However, a party alleging inconsistency in a jury verdict must object to the verdict before the jury is discharged. *See, e.g., Kosmynka v. Polaris Indus., Inc.*, 462 F.2d 74, 83 (2d Cir. 2006); *U.S. Football League v. Nat'l Football League*, 842 F.2d 1335, 1367 (2d Cir. 1988). Defendants have therefore waived this argument by failing to raise it at any time prior to the filing of the instant motion.[5]

---

[4] The Court previously held that, under New York law, a cause of action for breach of fiduciary duty is governed by a six-year statute of limitations period if based on actual fraud or a breach of contract and that the applicability of the six-year limitations period would depend on the viability of the underlying fraud and/or breach of contract claims. *Malmsteen v. Berdon*, 477 F. Supp. 2d 655, 667 (S.D.N.Y. 2007). Because plaintiff's fraud claim was dismissed at the close of plaintiff's case, the breach of contract claim was the sole remaining basis for applying a six-year limitations period to plaintiff's breach of fiduciary duty claim.

[5] Defendants insist that they are not asserting an inconsistent verdict, but rather "argu[ing] that the only consistent reading of the verdict in line with the instructions given to the jury must result in judgment being entered as a matter of law in favor of defendants." (Reply Mem. 3.) The Court rejects this distinction. Regardless how the claim is characterized, the Court would find it waived because Defendants failed to raise the argument when the verdict was entered, nor did they argue during trial, at the close of Plaintiff's case, during objections to the jury instructions, or in the pre-trial order that failure of Plaintiff's breach of

In any case, even if defendants had raised this argument in a timely fashion, it would be rejected. "To justify setting aside an otherwise valid jury verdict, the special verdict answers must be '*ineluctably* inconsistent.'" *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (quoting *Tolbert*, 242 F.3d at 74). "[I]f there is any way to view a case that makes the jury's answers to the special verdict form consistent with one another, the court must resolve the answers that way even if the interpretation is strained." *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1312 (2d Cir. 1993) (citations omitted). The jury's failure to award damages on plaintiff's breach of contract claim was likely its attempt to comply with the Court's instruction that they could not award "actual damages more than once for the same loss" if they found for plaintiff on both the breach of contract and breach of fiduciary duty claims. (Jury Instructions #19.) Viewed in this light, the jury's damage awards are not "ineluctably inconsistent."

### E. A Reasonable Jury Could Have Concluded That Defendants Breached Their Fiduciary Duty to Plaintiff

Defendants argue that "the claimed breach of fiduciary duty should not have been presented to the jury because the alleged breach did not pertain to anything over which the defendants could exercise any degree of discretion. (Defs. Mem. 14.) The Court interprets this as an argument that there was no evidence that defendants' fiduciary duties to plaintiff included a duty to monitor income being paid to the JLE account. (*See id.* at 13–14.) Assuming *arguendo* that defendants raised this argument with the requisite

---

contract claim would require dismissal of the breach of fiduciary claim as time-barred. *See, e.g., Perks v. Town of Huntington*, 234 Fed. Appx. 8, 10 (2d Cir. 2007) (holding that a "case-by-case application of the familiar principles of waiver" compelled a finding of waiver where "a timely objection to the verdict would have permitted the district court to resolve the confusion inherent in the jury's responses, and indeed, a timely objection to the underlying charge could have prevented the confusion in the first place"); *Fabri v. United Techs. Int'l, Inc.*, 387 F.3d 109, 119 (2d Cir. 2004) ("When a charge or verdict sheet may lead to inconsistent verdicts, a party must object before the jury begins its deliberations.").

10

specificity as part of their Rule 50(a) motion, the Court finds that there was sufficient evidence from which a reasonable jury could have concluded that defendants undertook this duty. As discussed above, the jury was entitled to credit plaintiff's testimony that Mitnick agreed to make sure that all of plaintiff's income was "collected and accounted for and looked at and put in the right spot." (Trial Tr. 39, 42.) Defendants also contend that there was no evidence that any fiduciary duty was breached as this element was defined in the jury instructions. With respect to the "breach of duty" element of the fiduciary duty claim, the jury was charged that

> A fiduciary owes its client undivided and unqualified loyalty and good faith and may not act in any manner contrary to the interests of the client. A person acting in a fiduciary capacity is required to make truthful and complete disclosures of information he possesses to those to whom a fiduciary duty is owed and the fiduciary is forbidden to obtain an improper advantage at the other's expense.

(Jury Instructions #16.) A reasonable jury could have concluded that defendants acted contrary to plaintiff's interests by failing to take reasonable steps as plaintiff's business agent to monitor plaintiff's income that was being deposited into a bank account maintained by Lewis.

Finally, defendants argue that there was no evidence that any breach of fiduciary duty was the proximate cause of damages to plaintiff or that plaintiff suffered any damages. The jury was charged that "for damage to be the proximate result of an act of course of dealing, it must be shown that such act or course of dealing played a substantial part in causing or bringing about the damage, and that, except for the conduct, the damage would not have occurred." (*Id.* #17.) As discussed, a reasonable jury could have concluded based on the evidence admitted at trial that Lewis embezzled significant amounts of money from plaintiff. A reasonable jury could also have concluded that

11

defendants' failure to discover and/or prevent such embezzlement played a substantial part in causing the loss resulting from the embezzlement and that, if defendants had performed their duties, the embezzlement would not have occurred.

### F. The Jury's Damages Award is Not Excessive

Defendants argue that, even if the Court permits the breach of fiduciary duty verdict to stand, it must reduce the damages award pursuant to Fed. R. Civ. P. 50 or 59. (Defs.' Mem. 19–20.) In support of a reduction of damages, defendants reassert their arguments that there was no evidence of plaintiff's gross or net earnings and that Cohen's analysis erroneously assumed that (i) all deposits into the JLE account were payments to plaintiff and (ii) that Lewis did not pay expenses on plaintiff's behalf.

The jury was instructed that it could award "the actual damages sustained for the diversion of his income to the [JLE] bank account for the period between January 28, 1999 and the date the fiduciary relationship ended, including the fees that [plaintiff] paid to [defendants] during this period." (Jury Instructions #18.) As discussed earlier, a reasonable jury could have concluded that the JLE account contained between approximately $385,000 and $543,000 in payments intended for plaintiff and that only $8,000 of this amount was paid into plaintiff's bank account. Also, Mitnick testified that he was paid approximately $42,000 in fees during the relevant period. (Trial Tr. 284–93.) The jury's award of $450,000 is not against the weight of the evidence and, in fact, falls comfortably within the range of damages that a reasonable jury could have found plaintiff was entitled to based on the evidence presented.

### G. Plaintiff's Summation Does Not Warrant a New Trial

Defendants argue that plaintiff's summation was "so inappropriate and beyond the pale that a new trial is warranted." (Defs.' Mem. 21.)

"Not every improper or poorly supported remark made in summation irreparably taints the proceedings; only if counsel's conduct created undue prejudice or passion which played upon the sympathy of the jury, should a new trial be granted." *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 127 (2d Cir. 2005); *see also Parrish v. Sollecito*, 280 F. Supp. 2d 145, 168 (S.D.N.Y. 2003) ("A new trial is only warranted where the attorney's concluding argument deprived the opposite party of a fair trial." (internal quotation marks omitted)). Whether to order a new trial due to remarks made during summation "is within the broad discretion of the trial court." *Id.* at 168.

In assessing the impact of allegedly improper comments by counsel during summation, "a court must examine, on a case-by-case basis, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g. whether it is a close case), and the verdict itself." *Marcoux v. Farm Serv. & Supplies, Inc.*, 290 F. Supp. 2d 457, 472 (S.D.N.Y. 2003) (quoting *Forrestal v. Magendantz*, 848 F.2d 303, 309 (1st Cir. 1988)); *see also Parrish*, 280 F. Supp. 2d at 168 (stating that a summation should be considered in its entirety "within the context of the court's rulings on objections, the jury [charge], and any corrective measures applied by the trial court.").

The only portion of plaintiff's summation to which defendants objected was a portion of Mitnick's deposition testimony that plaintiff's counsel read to the jury and

13

characterized as "testimony." (Trial Tr. 373–74.) The testimony in question was, "At the time of [plaintiff's] divorce, [Lewis] informed us . . . that the attorneys had recommended that we show as little income as possible on [plaintiff's] books." (*Id.* at 373.) When defendants' counsel objected, plaintiff's counsel represented to the Court, incorrectly, that the excerpt was deposition testimony that had been used at trial. (*Id.* at 373–74.) The Court overruled the objection and instructed plaintiff's counsel that he was permitted to read trial testimony to the jury but not deposition testimony. (*Id.*) While plaintiff's counsel should not have read testimony not in evidence to the jury, the deposition testimony in question did not differ materially from Mitnick's trial testimony (*see id.* at 250–51), and defendants do not identify any way in which this statement caused them prejudice.

Though defendants made no other objections during summation at trial, they now challenge plaintiff's counsel's statements regarding the "cozy" relationship between defendants' counsel and Lewis, his suggestion that defendants' counsel influenced Lewis's testimony, his repeated references to Mitnick as a "liar," his suggestion that Mitnick was directly involved in embezzling money from plaintiff, his statement that plaintiff's divorce was in 2000, his "harping on" irrelevant points, and his request for damages based on Lewis's commissions. (*See* Defs.' Mem. 22–24.) "When the complaining party fails to object at trial to statements made during summation, the court will only grant a new trial when the 'error is so serious and flagrant that it goes to the very integrity of the trial.'" *Hart v. Consol. Rail Corp.*, No. 96 Civ. 1769, 1998 WL 865572, at *2 (N.D.N.Y. Dec. 9, 1998) (quoting *Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 51 (2d Cir. 1998)); *see also Wantanabe Realty Corp. v. City of New York*, No. 01

Civ. 10137 (LAK), 2003 WL 22862646, at *6 (S.D.N.Y. Dec. 3, 2003) (holding that a verdict was not tainted by an allegedly improper summation when the defendants did not make a contemporaneous objection unless there was "flagrant abuse"). The Court declines to order a new trial based on these statements. While certain of these statements may have been on shaky evidentiary footing, or were otherwise overzealous, they were not "so inflammatory or so unsupported by the record as to affect the integrity of the trial." *See, e.g., Marcic*, 397 F.3d at 126–27 (2d Cir. 2005).

The Court also notes that there is no indication that plaintiff's counsel's remarks during summation caused prejudice to defendants. The jury's damages award was relatively modest in light of the evidence and did not include punitive damages. Furthermore, defendants' claim to have been prejudiced by the summation is considerably undermined by their failure to object to the statements in question at trial. *See Okraynets v. Metro. Transp. Auth.*, 555 F. Supp. 2d 420, 430 (S.D.N.Y. 2008) (finding that defendants failed to demonstrate that they suffered "undue prejudice" from comment made during summation where defendants' counsel did not object to the comment at the time or move after summation to have the comment stricken from the record).

## CONCLUSION

For the foregoing reasons, the Court denies defendants' motions for judgment as a matter of law, for a new trial, and for remittur [57].

SO ORDERED.

Dated: New York, New York
       January 20, 2009

_____
Richard J. Holwell
United States District Judge